UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RODNEY CONLEY,                          )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )     CASE NO. 1:03-cv-1200-DFH-TAB
                                        )
LIFT-ALL COMPANY, INC.,                 )
                                        )
                    Defendant.          )

ENTRY ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Rodney Conley's employer, Productivity Fabricators, Inc., uses angle iron to make large billboard and advertising structures. Conley was using a nylon sling to unload 7000 pounds of angle iron from a truck. When the sling broke while suspending the load of iron, Conley was injured by the falling load. The sling was manufactured by defendant Lift-All Company. The load of 7000 pounds was within the sling's load limit in the particular configuration being used. The parties now agree that the sling failed because the edges of the load of iron cut it.

Conley sued Lift-All in state court for negligence, failure to warn, defective manufacture and design, and breach of implied warranties under Indiana law. Lift-All removed to the district court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Defendant Lift-All has moved for summary judgment. The only

theory upon which Conley has opposed summary judgment is his claim that Lift-All failed to provide adequate warnings that the edges of a load that are not sharp could still cut the sling and cause it to drop its load if the sling is not protected by padding.  The claim is governed by the Product Liability Act, Indiana Code § 34-20-1-1 *et seq.*

As explained below, disputed factual issues preclude summary judgment. Disputed issues of fact govern whether Lift-All had a duty to warn about the danger that dull or rounded edges could cut the sling, whether Lift-All provided adequate warnings, and whether the alleged failure to give adequate warning was a proximate cause of Conley's injuries.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only genuine disputes over material facts can prevent a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the

outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the party believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Local Rule 56.1 requires the party opposing a motion for summary judgment to identify specific and material factual disputes.

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. at 255; *Celotex*, 477 U.S. at 323; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Anderson v. Liberty Lobby*, 477 U.S. at 252; *Packman v. Chicago*

*Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corp. v. Security Insurance Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

*Undisputed Facts*

The following facts are either undisputed or reflect the evidence in the light most favorable to plaintiff Conley as the party opposing summary judgment. Adverse facts established by Lift-All beyond reasonable dispute are necessarily included in the narrative.

1.    *The Accident*

Plaintiff Rodney Conley worked at Productivity Fabricators, a steel fabrication business.  Conley was injured on July 20, 2001, while using a sling manufactured by Lift-All to unload three bundles of angle iron, together weighing about 7000 pounds, from a truck.  Complaint ¶¶ 9-10; Conley Dep. at 20, 24.  The sling was attached to an overhead crane.  The angle iron pieces were three inches by four inches by one quarter inch thick.  Conley Dep. at 20-21.  No protective barrier had been placed between the sling and the suspended load of angle iron. Conley Dep. at 58.  Conley was standing next to the load with his hand on the load when the sling broke.  Complaint ¶¶ 17-19.  The parties agree that the sling broke because the load of iron cut it.  Closson Aff. ¶ 8; Pl. Br. at 6.

2.    *The Synthetic Sling and Standards for Use*

The Lift-All sling at issue, type EE2-802, was made of nylon.  Closson Aff. ¶ 7.  Productivity Fabricators purchased the sling from Fastenal Company.  Complaint ¶ 14; Conley Dep. at 53.  Conley did not order, receive, or unpackage the product.  *Id.*  He did not see the sling until it had been unpackaged.  Conley Dep. at 53-54.  He never examined a Lift-All catalog, which provides information about the sling and shows pictures of damage to the sling.  *Id.*; Closson Aff. ¶ 8.[1]

Synthetic web slings are used in industry and construction for rigging loads.  Closson Aff. ¶ 11; Babinchak Aff. ¶ 5.  Federal Occupational Safety and Health Administration ("OSHA") regulations govern the use of web slings and state in relevant part:

> (a) Scope.  This section applies to slings used in conjunction with other material handling equipment for the movement of material by hoisting, in employments covered by this part. The types of slings covered are those made from alloy steel chain, wire rope, metal mesh, natural or synthetic fiber rope (conventional three strand construction), and synthetic web (nylon, polyester, and polypropylene).
>
> * * *
>
> (c) Safe operating practices.  Whenever any sling is used, the following practices shall be observed:
>
> > (1) Slings that are damaged or defective shall not be used.
> > (2) Slings shall not be shortened with knots or bolts or other makeshift devices.
> > (3) Sling legs shall not be kinked.

---

[1]The Fastenal Company was voluntarily dismissed without prejudice as a defendant on April 6, 2004.  Fastenal is a seller and distributor of products including Lift-All slings.

(4) Slings shall not be loaded in excess of their rated capacities.
(5) Slings used in a basket hitch shall have the loads balanced to prevent slippage.
(6) Slings shall be securely attached to their loads.
(7) *Slings shall be padded or protected from the sharp edges of their loads.*
(8) Suspended loads shall be kept clear of all obstructions.
(9) All employees shall be kept clear of loads about to be lifted and of suspended loads.
(10) Hands or fingers shall not be placed between the sling and its load while the sling is being tightened around the load.
(11) Shock loading is prohibited.
(12) A sling shall not be pulled from under a load when the load is resting on the sling.

(d) Inspections.   Each day before being used, the sling and all fastenings and attachments shall be inspected for damage or defects by a competent person designated by the employer.   Additional inspections shall be performed during sling use, where service conditions warrant.  Damaged or defective slings shall be immediately removed from service.

29 C.F.R. § 1910.184 (emphasis added).  In addition to the OSHA regulations, the American Society of Mechanical Engineers ("ASME") publishes standards applicable to slings.  Closson Aff. ¶ 15; Def. Ex. C; ASME B30.9-1996.  The ASME standards state in part:

(g) *Sharp corners in contact with the sling should be padded* with material of sufficient strength to minimize damage to the sling. . . .

(i) Personnel should stand clear from the suspended load. . . .

ASME B30.9-1996 § 9-5.9(g) and (i) (emphasis added).  Section 9-5.9 in general sets forth standards for sling safety.  ASME B30.9-1996 also sets forth standards regarding repairs to slings, inspections of slings, and criteria for removing slings from service.  See ASME B30.9-1996 § 9-5.8.

Lift-All relies on the testimony of Bradley D. Closson, an engineer who graduated from the Naval Academy and who has extensive experience in the operation of cranes and lifting heavy loads.  Closson has been the vice president of the ASME Safety Codes and Standards and vice chair of the B30 Safety Codes and Standards committee, which addresses slings and rigging.  Closson testified that slings like the one in question here are intended to be used only by people who have the training and experience to qualify them to do so.  He pointed out that the safety standards call for protecting the sling from load edges and warn of the need to stay clear of the suspended load.  He also testified that a qualified person would have recognized that using an unprotected sling to lift a load of angle iron would not be appropriate.

3.    *Warnings Provided by Lift-All*

The sling itself included the following warning on a tag sewn to the sling:

> ! WARNING
> FOLLOW THIS WARNING OR PERSONAL INJURY MAY RESULT
> INSPECT THE SLING FOR DAMAGE BEFORE EACH USE
> DO NOT CUT, OVERLOAD OR EXPOSE TO TEMPERATURE ABOVE
> 200ºF
> DISCARD WHEN RED CORE YARNS APPEAR.

Closson Aff. ¶ 18; Babinchak Aff. ¶ 11.  Conley himself saw that warning.  He did not see any written material or warnings other than the warning sewn on the sling.  Conley Aff. ¶ 13.

Lift-All slings like the one that Conley used were packaged with an information and warning sheet that stated in part:

> ! WARNING
> FAILURE TO READ, UNDERSTAND AND FOLLOW THE USE AND
> INSPECTION INSTRUCTIONS FURNISHED WITH EACH SLING MAY
> RESULT IN SEVERE PERSONAL INJURY OR DEATH.
>
> ! WARNING WEB SLINGS CAN BE CUT BY CONTACT WITH SHARP
> OR UNPROTECTED LOAD EDGES.  PROPER PADDING MUST BE
> USED TO PROTECT THE SLINGS.
>
> Web slings shall always be protected from being cut or damaged by
> corners, edges, protrusions, or abrasive surfaces.  See Wear Pad
> section of Lift-All Catalog.

Closson Aff. ¶ 18; Babinchak Aff. ¶¶ 8-9, Ex. A.  The information and warning sheet also reiterated several of the operating and inspection standards set forth in the OSHA regulations and ASME standards.  Babinchak Aff., Ex. A; 29 C.F.R. § 1910.184; ASME B30.9-1996.

Lift-All's expert witness testified that placing the warning and information sheets with sling packaging is the method used throughout the industry. Closson Aff. ¶ 21. On the issue of warnings, Closson testified that the combination of warnings on the sling and in the packaging was reasonable.  The sling itself cannot hold all of the detailed warnings.  Also, because of the essentially infinite variety of load shapes, compositions, and weights, the manufacturer cannot provide warnings that address all possible combinations.  Closson Aff. ¶¶ 22-23 (two paragraphs bear each number).

4.   *Conley's Conduct and Observations Before the Accident*

On the day of the accident, before lifting the load that broke the sling, Conley personally inspected the sling.  He observed no cuts, damage, or red cords, which would have indicated that the sling should not be used.  Conley Aff. ¶ 8. Before using the sling, Conley did not cut or overload the sling, or expose it to temperatures above 200 degrees.  *Id.*, ¶ 11.  The sling had been recently purchased and in use for only a short time.  *Id.*, ¶ 10.

During his employment at Productivity Fabricators, Conley witnessed or was involved in unloading angle iron with a Lift-All sling on hundreds of occasions. Conley Aff. ¶ 5.  At no time did Conley see a pad or other protection placed between the angle iron and the Lift-All sling, and unpadded slings had been used at Productivity for years without problems.  Conley Aff. ¶¶ 7, 12.  Before being

placed in charge of unloading angle iron, Conley was trained in how to unload angle iron using the Lift-All sling.  Conley Aff. ¶ 6.  He was not told and was not aware that such a pad or protection was necessary.  *Id.* ¶ 7.  Other facts are noted below, keeping in mind the standard for summary judgment.

## Discussion

Plaintiff Conley's claims against Lift-All are governed by Indiana's Product Liability Act ("IPLA"), Ind. Code § 34-20-1-1 *et seq.*  The IPLA was amended in 1995 and recodified in 1998 to apply to all product liability claims.  See *Butler v. City of Peru*, 733 N.E.2d 912, 918 n.2 (Ind. 2000), citing Pub. L. No. 278-1995, § 1, 1995 Ind. Acts 4051; and Pub. L. No. 1-1998, § 15, 1998 Ind. Acts 125.  The IPLA now governs all actions brought by a user or consumer against a manufacturer or seller for physical harm caused by a product, regardless of the substantive legal theory or theories upon which the action is brought.  § 34-20-1-1.  The IPLA effectively supplants Conley's common law claims because all of his claims are brought by a user or consumer against a manufacturer for physical harm caused by a product.  Plaintiff's common law claims will therefore be treated as merged into the IPLA claims.

Lift-All's motion for summary judgment addressed all theories Conley had raised in his complaint and earlier stages of the case.  In response, Conley has opposed summary judgment by arguing only that Lift-All failed to provide

adequate warnings that the sling could be cut by the edges of various types of loads, including angle iron that was not sharp.  The parties agree that the sling failed because it was cut by the suspended load of angle iron.  By failing to raise other arguments in opposition to summary judgment, Conley has effectively abandoned his claims of defective manufacture and design.

"A product is defective if the seller fails to:  (1) properly package or label the product to give reasonable warnings of danger about the product; or (2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer."  Ind. Code § 34-20-4-2.  To withstand summary judgment, Conley must come forward with evidence tending to show:  (1) Lift-All had a duty to warn the ultimate users of its sling that dull or rounded load edges could cut an unprotected sling; (2) the hazard was hidden and thus the sling was unreasonably dangerous; (3) Lift-All failed to exercise reasonable care under the circumstances in providing warnings; and (4) Lift-All's alleged failure to provide adequate warnings was the proximate cause of his injuries.  See Ind. Code §§ 34-20-2-2, 34-20-4-1; *Moss v. Crosman Corp.*, 136 F.3d 1169 (7th Cir. 1998); *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155 (Ind. App. 1997).

I.    *Duty to Warn*

There can be no actionable failure to warn without a duty to warn.  See *American Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 187 (Ind. 1983).  Under Indiana law, there is no duty to warn of known or obvious hazards.  See, *e.g.*, *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 655 (7th Cir. 1998) (applying Indiana law, no duty to remind consumers of known danger such as fact that coffee is served hot); *American Optical*, 457 N.E.2d at 188 (no duty to warn where "the risk of injury from the breaking of the lens [of safety glasses] through some fortuitous event is obvious to all").  The concept that there is no duty to warn of known or obvious risks has been described as the "open and obvious" rule in the context of negligence actions.  See *Bemis Co., Inc. v. Rubush*, 427 N.E.2d 1058, 1061 (Ind. 1981) (no duty to warn where danger is "open and obvious to all"); *Welch v. Scripto-Tokai Corp.*, 651 N.E.2d 810, 815 (Ind. App. 1995) (no duty to warn of open and obvious risks inherent in cigarette lighter).

Conley argues that the open and obvious rule does not apply to claims under the IPLA, but the court disagrees.  In *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437 (Ind. 1990), the Indiana Supreme Court held that the "open and obvious rule" from *Bemis* did not apply to strict product liability claims under an earlier version of the IPLA because the defense was not listed in the statute. 551 N.E.2d at 441-42.  However, the court stated that the obviousness of a danger was relevant in determining whether a product was sold in an unreasonably

dangerous and defective condition, and in evaluating the affirmative defense of incurred risk. *Id.* at 440-41. *Koske* did not directly address whether the open and obvious rule continued to apply to negligence claims. Three weeks after *Koske*, the Indiana Supreme Court held that it did in *Miller v. Todd*, 551 N.E.2d 1139, 1143 (Ind. 1990); see also *Welch*, 651 N.E.2d at 815 (explaining that combined effect of *Koske* and *Miller* allowed consideration of open and obvious character of danger to defeat either type of claim). The 1995 amendments to the IPLA abolished strict liability in failure to warn cases. *Taylor v. Monsanto Co.*, 150 F.3d 806, 808 (7th Cir. 1998) (under Indiana law, "there is no doctrinal distinction between the negligent and strict liability failure-to-warn actions"); see also Ind. Code § 34-20-2-2. Thus, the *Koske* holding that the open and obvious rule did not apply to strict liability claims under the Act simply does not apply to Conley's failure to warn claim against Lift-All. Under the IPLA, there is no duty to warn of an open and obvious danger.

Lift-All contends that it owed no duty to warn Conley of the hazard that a lifted load could cut an unprotected sling because this hazard was "open and obvious" to the intended community of users. The question cannot be resolved as a matter of law on this record.[2]

---

[2]Lift-All also contends that the sling was not unreasonably dangerous. Whether a hazard is open and obvious and whether the product is unreasonably dangerous are essentially two ways of asking the same question. See *First National Bank and Trust Corp. v. American Eurocopter Corp.*, 378 F.3d 682, 690, n.5 (7th Cir. 2004) ("Under Indiana law, there is a duty to warn reasonably foreseeable users of all latent dangers inherent in the product's use. . . . In failure
(continued...)

Conley contends that the risk that angle iron with rounded or dull edges could cut the sling was hidden or concealed. Conley relies on his own experience, both directly and watching others, in using slings to unload angle iron without padding and without incident. He also points out that the OSHA regulations and ASME standards address the hazard of cutting an unprotected sling with only "sharp" edges. The OSHA regulations provide: "Whenever any sling is used . . . Slings shall be padded or protected from the *sharp* edges of their loads." 29 C.F.R. § 1910.184. The relevant ASME standard states: "*Sharp* corners in contact with the sling should be padded with material of sufficient strength to minimize damage to the sling." ASME B30.9-1996 § 9-5.9(g). If a reasonable jury could infer from the facts that the hazard posed by a load of angle iron is hidden from the reasonable sling operator, a jury must decide whether Lift-All had a duty to warn of the danger. See *Cole v. Lantis Corp.*, 714 N.E.2d 194, 199 (Ind. App. 1999).

Whether a given danger is hidden depends on what the end user of the product should have known. *E.g.*, *Schooley v. Ingersoll Rand, Inc.*, 631 N.E.2d 932, 939 (Ind. App. 1994); *Ragsdale v. K-Mart Corp.*, 468 N.E.2d 524, 527 (Ind. App. 1984). The question often cannot be resolved by the court as a matter of law. *Baker v. Heye-America*, 799 N.E.2d 1135, 1140 (Ind. App. 2003); *Cole*, 714 N.E.2d at 199. However, the court may decide the issue on summary judgment if the

---

[2](...continued)
to warn cases, the 'unreasonably dangerous' inquiry is not a separate inquiry from whether the defect is latent or hidden.").

undisputed facts point to only one conclusion.  See *Ruther v. Robins Engineering &*
*Constructors*, 802 F.2d 276, 278 (7th Cir. 1986) (application of open and obvious
rule may be decided as a matter of law by the court if "from the uncontested facts
no reasonable jury properly instructed in Indiana law could infer that the danger
was not open and obvious").

Lift-All offers the testimony of Brad Closson as an expert in the field of
rigging practices.  Closson is vice-chairman of the ASME B30 committee that
promulgates standards for the use of slings and rigging practices.  Closson's
testimony does not demonstrate as a matter of law that the hazard that dull or
rounded edges might cut the sling was open and obvious.  Closson opined that the
general hazard presented by lifting a load with a synthetic sling, and the specific
hazard of cutting the sling with a load of one quarter inch thick angle iron, would
have been obvious to a reasonable sling operator "properly trained" in using the
sling.  See, *e.g.*, Closson Aff. ¶ 10 ("The issues of safe sling use and their hazards
as presented by the facts of this case are universally recognized in the lifting
industry and would be known to anyone *who met the minimum mandated*
*requirements regarding use of the sling.*"); *id.* ¶ 13 ("Federal OSHA regulations also
specifically address the hazards of slings being cut by the edges of the load, and
specifically require the employee to protect a synthetic web sling from the edges
of the load.  *A properly trained employee* using the sling would have been aware
of this hazard."); *id.* ¶ 16 ("The rigging configuration used by the plaintiff in this
case, which was to use an unprotected sling to lift a load of angle iron, would have

been recognized as inappropriate and unsafe by a person *who met the minimum knowledge and skill requirements to be considered as qualified* to perform the crane lift and load rigging operation."); *id.* ¶ 18 ("an intended user of the subject synthetic web sling [would] have been expected to know about the hazards associated with unprotected edges of a load making direct contact with the sling *due to their training*").


Closson's testimony begs the question of whether sling operators such as Conley are in fact properly trained in OSHA regulations and ASME standards, and whether a manufacturer like Lift-All may assume that they will be properly trained.  Lift-All presents no evidence that sling operators typically are in fact "properly trained."  Conley has testified that he was trained and that he and others repeatedly and safely used slings to lift unprotected loads of angle iron. That evidence tends to show either that sling operators are not "properly trained," at least as Lift-All sees it, or that the proper training does not produce the understanding described by Closson.  Without evidence that Conley received proper training, Closson's opinion that the hazard of lifting angle iron with an unpadded sling would have been known or obvious to a *properly trained* sling operator does not prove beyond reasonable dispute that the risk that rounded or dull edges would cut the sling would have been known or obvious to an ordinary user or consumer.  Furthermore, notwithstanding Closson's conclusory opinion in paragraph 17 – that manufacturers of slings reasonably expect that users will abide by OSHA requirements and ASME standards – there is no evidence in the

-16-

record that any sling operator has even read the relevant regulations or standards.[3]

Lift-All cites *In re Inlow Accident Litig.*, 2002 WL 970403, 2002 U.S. Dist. Lexis 8318 (S.D. Ind. April 16, 2002), *aff'd*, *First National Bank and Trust Corp. v. American Eurocopter Corp.*, 378 F.3d 682 (7th Cir. 2004), to support its argument. In *Inlow*, this court found that the specific risk of blade "flap" posed by decelerating helicopter rotor blades would have been obvious to a trained helicopter pilot but not to an untrained passenger.  *Inlow*, 2002 WL 970403, at *16; see also *American Eurocopter*, 378 F.3d at 691 (stating that although the dangers presented by moving rotor blades on a helicopter may be open and obvious, the specific danger posed by decelerating blades was hidden from passengers).  The helicopter manufacturer in *Inlow* came forward with evidence showing that all the helicopter pilots were in fact aware of the specific risk posed by decelerating rotor blades.  378 F.3d at 692; 2002 WL 970403, at *16.  Lift-All has not come forward with comparable evidence of knowledge in this case.

Conley's characterization of the one quarter inch edges of the angle iron pieces as "dull or rounded" is, of course, relative to the width of the edge and the material being cut.  People commonly refer to knives as sharp or dull, although

---

[3]The court overrules Conley's objections to Closson's testimony under Fed. R. Evid. 702.  Closson has ample qualifications to address the use of slings and appropriate warnings.  His testimony is also relevant to the central issue: whether the warnings Lift-All provided were reasonable and adequate.

a dull knife may still be able to cut some materials adequately.  The important question here for the duty to warn is whether a typical sling operator would have understood that the edges of a load of angle iron were the type of edges referred to in the OSHA regulations and ASME standards.  Whether a sling operator should have known that the rounded or dull edges of a load of angle iron were the type referred to in the regulations and standards is a question for the jury.

A duty to warn may also exist even if end users of a product know about a danger but believe that the product can still be used safely.  "If people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious."  *Anderson v. P.A. Radocy & Sons, Inc.*, 67 F.3d 619, 621-22 (7th Cir. 1995); accord, *Cole*, 714 N.E.2d at 199 ("whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see"), quoting *Kroger Co. Sav-On Store v. Presnell*, 515 N.E.2d 538, 544 (Ind. App. 1987); see also *McDonald v. Sandvik Process Systems, Inc.*, 870 F.2d 389, 394 (7th Cir. 1989) (although the danger posed by a moving slicing blade was obvious, whether the open and obvious rule would apply to bar recovery was a question of fact where employees had developed a generally safe method of tightening the blade while the machine was running); *Schooley*, 631 N.E.2d at 939 (although the danger of moving a large steel plate without safety chains was obvious, whether the rule would apply to bar plaintiff's recovery was a question of fact for the jury

where moving the plate was part of employee's job and the plate had been moved safely on many other occasions); *FMC Corp. v. Brown*, 526 N.E.2d 719, 725 (Ind. App. 1988), *aff'd*, 551 N.E.2d 444 (Ind. 1990) (even though the danger of electrocution posed by a power line was obvious to the operators of a crane, whether the open and obvious rule would apply to preclude recovery was a factual question for the jury where the operators often performed repairs near power lines and could have reasonably believed that it was safe to do so).  Conley testified that he never saw anyone use protection between a load of angle iron and the Lift-All sling.

In sum, Conley's evidence raises a genuine issue of fact as to whether a reasonable sling operator would have recognized that a load of angle iron could cut an unpadded Lift-All sling.  Whether Lift-All had a duty to warn Conley of this hazard cannot be decided as a matter of law.

II.   *Adequacy of Warnings*

Assuming that Lift-All owed a duty to warn users of a hidden danger that dull or rounded edges on a load could still cut the sling, the next issue is whether Lift-All fulfilled that duty.  Lift-All could fulfill a duty to warn in two ways.  First, it could provide warnings directly to the ultimate users of its slings, a group that includes sling operators like Conley.  Generally, warnings must be given to the end user of a product.  "A manufacturer has a duty to warn those persons it

should reasonably foresee would be likely to use its product or who are likely to come into contact with a latent danger inherent in the product's use." *Taylor*, 150 F.3d at 808, citing *Natural Gas Odorizing*, 685 N.E.2d at 162.  Second, Lift-All could satisfy its duty to warn by providing warnings and information to a "sophisticated intermediary." *Taylor*, 150 F.3d 806.

A.    *Direct Warning to End Users*

Lift-All provided warnings on the sling and warnings and information in documents packed with the sling.  The warning on the sling itself stated:

> ! WARNING
> FOLLOW THIS WARNING OR PERSONAL INJURY MAY RESULT
> INSPECT THE SLING FOR DAMAGE BEFORE EACH USE
> DO NOT CUT, OVERLOAD OR EXPOSE TO TEMPERATURE ABOVE
> 200ºF
> DISCARD WHEN RED CORE YARNS APPEAR.

The warning on the sling states:  "DO NOT CUT."  A reasonable jury could conclude that this phrase alone did not reasonably warn an end user that a dull or rounded load edge could cut the sling.

The more detailed warnings, including the warning that unprotected load edges required padding, were included in the sling's packaging.  Conley testified that he never saw any written material or warnings other than the warning sewn on the sling.  The Lift-All sling at issue was purchased from Fastenal Company by Conley's employer.  Conley himself did not order, receive, or unpackage the

product.  Conley never saw the sling until it had been unpackaged.  He never looked in a Lift-All catalog, which showed damage to slings.

Closson opined that it is impossible to provide definitive and complete warnings on the sling itself.  The numerous available rigging techniques and the vast number of load shapes, compositions, and weights that can be lifted safely by a synthetic web sling would require more information than the sling could carry.  Closson Aff. ¶¶ 21-22.  Closson also stated that presenting information and warnings through separate documentation provided as part of the sling's packing is a method used throughout the industry.  He opined that it is reasonable to include warnings on a separate warning document.  *Id.*

Is it reasonable for a manufacturer of the sling to assume that the buyer will ensure that all end users actually review the written warnings in the packaging?  A reasonable jury could infer from Conley's testimony that Productivity Fabricators did not make available to sling operators the documents that Lift-All packed with its slings, such as by posting in the workplace.  There is no evidence that Productivity Fabricators is an anomaly in this respect, and Lift-All has not shown that the warnings in the package included demands that every user review them personally.  Cf. *Jones v. Meat Packers Equipment Co.*, 723 F.2d 370, 372 (4th Cir. 1983) (manufacturer insisted that buyer of equipment instruct all employees in safety rules); *York v. Union Carbide Corp.*, 586 N.E.2d 861, 869 (Ind. App. 1992) (supplier of argon gas notified buyer that warnings must reach all end users).

Evidence that the presentation of warnings on separate packaging documentation is a method used throughout the industry does not always control whether the method is reasonable.   See *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932) (Hand, J.) (because an entire industry may be negligent, industry custom is only some evidence of what is reasonable).   There is a genuine issue of fact as to whether Lift-All could reasonably rely on buyers to pass along the warnings in the packaging.

B.    *Indirect Warning to Sophisticated Intermediary*

Lift-All could also satisfy its duty to warn end users of its sling by providing warnings and information to a "sophisticated intermediary." *Taylor*, 150 F.3d 806. Under the doctrine, the duty to warn end users is satisfied when the product is sold to a "sophisticated intermediary" whom the manufacturer has adequately warned.   *American Eurocopter*, 378 F.3d at 691; *Taylor*, 150 F.3d at 808-09 (affirming summary judgment based on sophisticated intermediary doctrine).   The manufacturer does not have a duty to warn the sophisticated intermediary of dangers known or obvious to the intermediary.   *Phelps v. Sherwood Medical Industries*, 836 F.2d 296, 304 (7th Cir. 1987).   The Seventh Circuit observed:

> Delegation of the duty to warn makes particular sense where the manufacturer cannot control how the intermediary will use the product, cf. *Hoffman v. E. W. Bliss Co.*, 448 N.E.2d 277, 286 (Ind. 1983), and where the form of the product does not easily lend itself to direct labeling.   Cf. *York v. Union Carbide Corp.*, 586 N.E.2d 861, 869 (Ind. Ct. App.1992).

*Taylor*, 150 F.3d at 808.

For the doctrine to apply, however, the intermediary must have knowledge or sophistication equal to that of the manufacturer, and the manufacturer must be able to reasonably rely on the intermediary to warn the ultimate user. *American Eurocopter*, 378 F.3d at 691 (affirming summary judgment where helicopter pilots knew of danger of decelerating rotor blades); *Taylor*, 150 F.3d at 808 (affirming summary judgment because Monsanto Co. was sophisticated intermediary regarding dangers of PCBs).

In this case, Conley's employer, Productivity Fabricators, is the intermediary. The evidence does not show beyond dispute that the intermediary had knowledge and sophistication with regard to sling use and hazards equal to that of Lift-All, the manufacturer. The OSHA regulations and ASME standards cautioned against using a synthetic sling to lift loads with "sharp" edges, not all edges. Also, the evidence here from Conley indicates that Productivity Fabricators had consistently been using unprotected slings to lift angle iron without incident until Conley's accident.

The undisputed evidence shows that Lift-All gave a warning to Productivity to use padding to protect edges. The warning and information sheets provided with the sling packaging warned about the hazard of cutting the sling with edges of any unprotected load, not just those with "sharp" edges. "! WARNING WEB

SLINGS CAN BE CUT BY CONTACT WITH SHARP OR UNPROTECTED LOAD
EDGES.  PROPER PADDING MUST BE USED TO PROTECT THE SLINGS." "Web
slings shall always be protected from being cut or damaged by corners, edges,
protrusions, or abrasive surfaces." Closson Aff. ¶ 18.  The evidence stops short
of showing as a matter of law that Productivity Fabricators had knowledge or
sophistication equal to that of the sling's manufacturer, let alone that the
manufacturer could reasonably rely on the buyer to pass the warnings along to
end users who would be in the danger zone.

Even if Lift-All could establish as a matter of law that Productivity
Fabricators was a sophisticated intermediary for these purposes, Lift-All would not
be entitled to summary judgment.  To determine whether a manufacturer has
satisfied a duty to warn by relying upon a sophisticated intermediary, Indiana
courts have considered the factors in comment n to Section 388 of the
Restatement (2d) of Torts:  "the likelihood or unlikelihood that harm will occur if
the intermediary does not pass on the warning to the ultimate user, the trivial
nature of the probable harm, the probability or improbability that the particular
intermediary will not pass on the warning[,] and the ease or burden of the giving
of the warning by the manufacturer to the ultimate user." *Ritchie v. Glidden Co.*,
242 F.3d 713, 724 (7th Cir. 2001), quoting *Natural Gas Odorizing*, 685 N.E.2d at
163.  The court in *Natural Gas Odorizing* cautioned that these factors will usually
cause the sophisticated intermediary doctrine to present questions of disputed
fact:

Whether a manufacturer has discharged its duty under the sophisticated intermediary doctrine is almost always a question for the trier of fact.  *See Dole Food*, 188 Ariz. at 303, 935 P.2d at 881. The manufacturer's reliance on the intermediary's alleged sophistication may be more or less reasonable given the product's nature, complexity and associated dangers, the likelihood that the intermediary will communicate warnings to the ultimate consumer, the dangers posed to the ultimate consumer by an inadequate or nonexistent warning, and the feasibility of requiring the manufacturer to directly warn the product's ultimate consumers. Ultimately, those factors must be balanced by the trier of fact.

685 N.E.2d at 164.  Notwithstanding these cautions, of course, many Indiana cases on the sophisticated intermediary doctrine have been decided as a matter of law.  See, *e.g.*, *American Eurocopter*, 378 F.3d at 692 (affirming summary judgment under Indiana law); *York*, 586 N.E.2d at 869 (affirming summary judgment).

The relevant factors under Restatement (2d) § 388, comment n, would not require a jury to find in favor of Lift-All even if Productivity Fabricators were deemed a sophisticated intermediary.  First, the severity of the probable harm from a broken sling can be great, especially if it is carrying several tons of angle iron.  Second, the evidence does not show that Lift-All could assume that Productivity Fabricators would pass along the detailed warnings to its employees. The record here does not include the evidence of the buyer's training program for its employees and affirmative safety measures that supported summary judgment in a case cited by Lift-All, *Singleton v. Manitowoc Co., Inc.*, 727 F. Supp. 217, 226 (D. Md. 1989 ) (granting summary judgment for crane manufacturer who could

expect industrial user to recognize risks and to train its employees), *aff'd*, 931 F.2d 887 (4th Cir. 1991).   A reasonable jury could infer from Conley's testimony that Productivity Fabricators does not train its sling operators specifically to use padding when lifting angle iron or generally to be aware of the various types of edges that may cut an unprotected sling.

III.   *Proximate Cause*

Conley has raised genuine issues of fact as to Lift-All's duty to warn and whether it fulfilled that duty.   The last issue presented by Lift-All's motion for summary judgment is whether Lift-All's alleged failure to provide an adequate warning was a proximate cause of Conley's injuries.   "In approaching proximate cause in warnings cases, the focus is on the effect of giving a warning on the actual circumstances surrounding the accident.   The question is whether the plaintiff's injury was a natural and probable consequence of the failure to warn about the dangers associated with the product.   This issue may require that the plaintiff show that an adequate warning would have altered the conduct which led to the injury."   *Natural Gas Odorizing*, 685 N.E.2d at 164, citing 63A Am. Jur. 2d, *Products Liability* § 1171; see also *Clark v. Bohn Ford, Inc.*, 213 F. Supp. 2d 957, 962 (S.D. Ind. 2002) (to establish claim for failure to warn, plaintiff must show some reasonable connection between the omission of the manufacturer and the damages he suffered; *i.e.*, that the injury would have been less likely to occur had a different warning been provided).   Like the other elements of a product liability

-26-

case, proximate cause is often an issue for the fact-finder, unless "only one conclusion can be drawn from the facts" *Ritchie v. Glidden Co.*, 242 F.3d 713, 725 (7th Cir. 2001), quoting *City of Indianapolis Housing Authority v. Pippin*, 726 N.E.2d 341, 347 (Ind. App. 2000).

Conley claims that the labels, warning, and instructions provided by Lift-All were deficient because, in part, they failed to give reasonable warning of the danger of lifting loads with "dull or rounded edges" without some form of protection for the sling.  Conley proposes an alternative warning for the sling label: "CAUTION – DO NOT USE THIS SLING TO LIFT ANY ITEM WITH EDGES, WITHOUT PROVIDING SUFFICIENT PADDING OR PROTECTION FOR THE SLING." Pl. Br. at 9-10.  Conley also identifies a second alternative:  a warning that slings should be used only by individuals who by training and experience are qualified to do so.  Pl. Br. at 13.[4]

Either alternative presents a jury question.  There are surely limits as to the volume of warnings that could be placed on the sling itself, but the fact that there are limits does not mean these were not feasible alternatives.  Also, some manufacturers have supplied documents along with packaging warnings that caution the intermediary to make sure that information regarding the product's

---

[4]Conley had earlier proposed three additional alternative warnings that involve the length of loads, wooden spacers, and tag lines. See Pl. Pretrial Mem., Docket No. 30; Closson Aff. ¶¶ 22-24.  Conley did not discuss these alternatives in his brief, and the court has not considered them.

hazards reaches the end users.  See, *e.g.*, *Jones*, 723 F.2d at 372 (manufacturer of mixer-blender sent letter and metal signs to employer packing plant stating that the company must instruct its employees in various safety rules); *York*, 586 N.E.2d at 869 (supplier of argon gas supplied employer with booklet entitled "Safety Precautions" on the front of which was a notice to "Make certain that the information contained in this booklet and in the gas equipment manufacturer's operating instructions reaches each person who may use or come in contact with the products covered herein.  These products are for use by trained personnel only."); *Dole Food Co., Inc. v. North Carolina Foam Industries, Inc.*, 935 P.2d 876, 878 (Ariz. App. 1996) (manufacturer of polyurethane foam sent letter to all new customers cautioning that the information and warnings provided with the product "should be understood thoroughly by you and your personnel before applying spray-in-place urethane chemicals").  There is no evidence that Lift-All included such an instruction.  Lift-All presents no evidence that it ever considered the probability that purchasers of its synthetic sling would convey the information in its packaging documents to the ultimate users of the sling.

Lift-All contends generally that Conley cannot present expert testimony to support his claim.[5]  The court agrees that Magistrate Judge Baker's July 19, 2004

---

[5]Magistrate Judge Baker extended the expert witness deadline once for plaintiff, and warned in his May 18, 2004 order that the deadline "will not be extended further."  On July 13, 2004, plaintiff filed an emergency motion to extend the deadline again.  In a July 19, 2004 order, Magistrate Judge Baker denied plaintiff's motion.  Judge Baker's denial was based on his prior warning, his observation that plaintiff appeared to still be scrambling to find an expert to
(continued...)

order precludes Conley from presenting an expert at trial.  However, Conley may present his argument for proximate cause to a jury without expert testimony.  An expert is normally required in design defect cases because the feasibility of an alternative design and the likelihood that an alternative design would have prevented an injury are usually technical questions outside the experience of lay persons.  See, *e.g.*, *Cummins v. Lyle Industries*, 93 F.3d 362, 368 (7th Cir. 1996) (affirming district court's exclusion of expert's testimony on feasibility of alternative designs where expert did not test alternatives); *Pries v. Honda Motor Co.*, 31 F.3d 543, 546 (7th Cir. 1994) (required proof for design defect under Indiana law).  The cases of alternative warnings, however, may not always require the same degree of technical analysis as design cases.  Conley has proposed two relatively simple alternative warnings.  These alternatives do not involve technical issues of design or orientation.  Whether these alternatives would have been effective can be evaluated by a jury without the help of expert testimony.

The Seventh Circuit has stated in dicta that the requirements of design defect cases – to present expert testimony on the testing of alternative designs – apply to failure to warn cases under Illinois law.  See *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001); *Bourelle v. Crown Equipment Corp.*, 220 F.3d 532, 538 (7th Cir. 2000). However, in those cases the proffered expert

---

[5](...continued)
flesh out the theories of liability articulated more than a year earlier, and the fact that the failure to meet the previously enlarged deadline was primarily the result of a calendaring mistake.  See *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1024 (7th Cir. 1991) ("Judges must be able to enforce deadlines.").

had not even suggested an alternative warning.  *E.g.*, *Dhillon*, 269 F.3d at 870 (finding expert witness "has not designed or suggested to the court an alternative warning that would have been appropriate or tested its effectiveness"); *Bourelle*, 220 F.3d at 539 ("The fact that [the expert witness] never even drafted a proposed warning renders his opinion akin to 'talking off the cuff' and not accepted methodology."); see also *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (excluding expert testimony that warnings were deficient in placement, design, orientation, and content as unreliable because the experts had not created or designed a warning device that would have been more appropriate).

Here, plaintiff proposed alternative warnings.  Also, Lift-All has not argued that such testimony is essential under Indiana law, which governs here.  Indiana law allows a plaintiff to prove in a proper case that a warning is inadequate without expert testimony on the subject.  See *Montgomery Ward & Co. v. Gregg*, 554 N.E.2d 1145, 1159 (Ind. App. 1990) (affirming judgment for plaintiff; "[t]hat warnings prevent accidents is the basic premise of Gregg's action and a matter of common knowledge for which Forney needed no special expertise").  Expert testimony is required to sustain the plaintiff's burden of proof on the question of the existence of a defect only where matters are beyond the common understanding of a lay juror.  See *Cansler v. Mills*, 765 N.E.2d 698 (Ind. App. 2002) (finding that expert testimony was not needed to find a manufacturing defect in air bag that failed to deploy where car was traveling 45 to 50 miles per hour at moment of impact, impact bent the car's frame, and air bag was designed

to deploy in frontal collisions at speeds greater than nine to fifteen miles per hour);
see generally 63A Am. Jur. 2d, *Products Liability* §§ 612, 1222.  The Indiana Court
of Appeals explained in *Cansler*:

> Expert testimony is not always required to establish an element of a
> products liability action if there is sufficient circumstantial evidence
> within a lay person's understanding that would constitute a basis for
> a legal inference and not mere speculation.  In order to justify
> dismissing a case because the plaintiff has failed to present expert
> testimony, a court must find that the facts necessary to establish a
> prima facie case cannot be presented to any reasonably informed
> factfinder without the assistance of expert testimony.

765 N.E.2d at 706, citing *U-Haul International, Inc. v. Nulls Machine and Mfg. Shop*,
736 N.E.2d 271, 285, n.3 (Ind. App. 2000).  Also, the warnings proposed by
plaintiff in this case do not involve complexities like those that troubled the court
in *McMahon v. Bunn-O-Matic*, 150 F.3d at 656.[6]  Conley's alternative warnings add
non-technical language.  In this case, whether the alleged failure to warn was a
proximate cause of Conley's injuries presents a disputed issue of fact.

*Conclusion*

    On this record, genuine issues of material fact govern whether defendant
Lift-All is liable under the Indiana Product Liability Act for failure to warn plaintiff

_____

    [6]In *Bunn-O-Matic*, the plaintiffs argued that although they knew that hot
coffee could burn, defendants should have warned them more specifically that the
hot coffee could produce "full thickness" third degree burns.  The court rejected
plaintiffs' argument, reasoning that the standard would require warnings so
detailed – equivalent to the package inserts that comes with drugs – that they
would not be readily understood by consumers who have to weigh the benefits of
hot coffee against its risks.

Conley of the hazard that dull or rounded edges of loads pose for defendant's synthetic slings.   Accordingly, defendant's motion for summary judgment is denied.


        So ordered.


Date: July 25, 2005

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Robert A. Garelick
COHEN GARELICK & GLAZIER
bgarelick@cgglawfirm.com

Bryan S. Redding
COHEN GARELICK & GLAZIER
bredding@cgglawfirm.com

Pfenne Peter Cantrell
KIGHTLINGER & GRAY
pcantrell@k-glaw.com

Steven Edward Springer
KIGHTLINGER & GRAY
sspringer@k-glaw.com